UNITED STATES of America,
Plaintiff,

v.

Noah WHITE, Defendant.

No. CR.A. 4:04CR89.

United States District Court,
E.D. Virginia,
Newport News Division.

Oct. 19, 2004.

Stephen W. Haynie, United States Attorney's Office, Norfolk, VA, for Plaintiff.

Riley H. Ross, III, Office of the Public Defender, Norfolk, VA, for Defendant.

Steven F. Lederman, Department of Social Services, Division of Child Support Enforcement, Virginia Beach, VA, for Commonwealth of Virginia.

## ORDER

FRIEDMAN, District Judge.

Pending before the court is a motion to quash a government-issued subpoena duces tecum, filed by the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement ("the Division"). The defendant has moved to adopt the Division's motion and supporting brief. The government has filed a response in opposition to the motion. On October 14, 2004, the court held a hearing on the matter with all parties, including the defendant, present. For the reasons stated on the record during that hearing, as well as those set forth herein, the court **DENIES** the Division's motion to quash the subpoena, but **ORDERS** that the subpoena be appropriately modified.

### I. Background

On August 23, 2004, the government caused a subpoena duces tecum to be served on Earnest Lee Williams, the District Manager of the Newport News, Virgi-

nia District Office of the Division. The subpoena commanded Williams' appearance in court on the originally scheduled trial date of September 1, 2004. The court notes that the trial has since been continued until November 16, 2004. Attachment A of the subpoena commanded Williams to bring with him the following documents:

> ALL financial records, related or incident to NOAH WHITE ... including, but not limited to, accounting information, payment history, and arrearage balance(s) for the period covering January 1999 to June 2000.

The government maintained in its brief, and during the hearing, that the focus of this subpoena is information relating to child support payments made by the defendant for the period indicated. These records allegedly relate to the evidence required to prove Count Five of the superceding indictment, which charges the defendant with making a false oath in a bankruptcy proceeding. Specifically, Count Five alleges that the defendant testified falsely under oath at a February 16, 2000 hearing. Allegedly, the defendant stated to the Bankruptcy Trustee that he was "caught up" in his child support payments when he was, in fact, at least 120 days in arrears in his support payments at that time and had been at least 120 days in arrears of child support payments for the prior six months.

## II. The Division's Motion to Quash

Due to the broad scope of this request and the short time between the date of service and the then September 1, 2004 trial date, the Division filed its motion to quash on August 30, 2004. In its brief in support of the motion to quash, the Division referenced certain federal statutes and regulations relating to the Medicaid and Aid to Family with Dependent Children ("AFDC") programs, as well as to statutory provisions from the Virginia Code relating to the prohibited disclosure of information by state social services programs. The Division maintained that once served with a subpoena requiring the production of case records or testimony from a Division representative, it must inform the court of the applicable statutory provisions regulating such disclosures.

In its motion and during the course of the hearing, the government clarified that it is only interested in information relating to arrearages, if any, on the defendant's child support payment obligations, for a period six months prior to and including the date of the bankruptcy proceeding during which the alleged false testimony occurred. The government further made clear at the hearing that it is not interested in any information on Medicaid or AFDC benefits related to the defendant or his children, or in any information regarding the recipient of child support payments. Therefore, the court need not further address the Division's arguments related to these types of records. The court does observe, however, that similar arguments have not prevented the disclosure of certain Medicaid, ADFC and other benefit information governed by federal regulation, in the context of a government-issued grand jury subpoena duces tecum. *See In re: Grand Jury Subpoena Duces Tecum,* 2001 WL 896479 (W.D.Va.2001).

With respect to records and registries of the Division that pertain to assistance and child support enforcement, the Division maintained in its brief that the Virginia Code requires these records to be treated confidentially and limits their disclosures to persons having a legitimate interest, or those persons specified in the Virginia Code. *See* Va.Code. Ann. §§ 63.2–102, 103. Although records established by the Department of Social Services, of which the Division is a part, shall be made available to prosecuting attorneys and courts en-

gaged in the enforcement of child support, the Division maintained that this exception not would allow disclosure of the requested records in the current context. *See id.*

Finally, the Division maintained that Earnest Lee Williams, as the District Manager for the Newport News District Office of the Division, is not the proper custodian of records. The Division employs court specialists that serve as record custodians and can testify when necessary.

### III. Discussion

Pursuant to Federal Rule of Criminal Procedure 17(c)(2), the court may quash or otherwise modify a subpoena if compliance would be unreasonable or oppressive. Fed.R.Crim.P. 17(c)(2). Although counsel for the Division acknowledged at the hearing that it understood the government's request to be narrower than that outlined in the subpoena duces tecum, the Division continued to maintain that the subpoena should nonetheless be quashed. Both the Division, the government and the defendant agreed that the issue before the court is whether the sought after information or records are subject to a privilege against disclosure.

At the hearing, the Division argued, in supplement to its brief, that it has the statutory ability to collect information relating to child support from various sources and that Virginia statutes prevent disclosure of information obtained through these collection methods. With respect to the records regarding child support payments made by the defendant, Virginia Code section 63.2–102 does provide that "[a]ll records ... that pertain to public assistance and child support enforcement provided to or on behalf of any individual shall be confidential and shall not be disclosed except to persons specified hereinafter and to the extent permitted by state and federal law and regulation." Va.Code. Ann. § 63.1–102. It is not entirely clear whether the records sought by the govern-

ment would fall within the ambit of "child support enforcement," as the government seems to be interested solely in arrearage information, rather than on any child support enforcement measures taken on behalf of the defendant's child.

The second paragraph of section 63.2–102 restricts disclosure of "record[s], information or statistical registries concerning applicants for and recipients of public assistance and child support" to "purposes directly connected with the administration of the programs." *Id.* This prohibition seems directed toward records concerning the recipient of child support payments, rather than the provider of these payments.

Virginia Code section 63.2–103 restricts the disclosure of records established pursuant to the provisions of section 63.2–1902. This latter section provides for the creation of a central unit that may receive and coordinate information from a variety of sources that relate to the enforcement of child support. *See* Va.Code Ann. § 63.2–1902. The account status of those owing child support is not specifically discussed. In seeking to quash the subpoena, the Division has the burden of demonstrating how the required records fall within the scope of these statutes such that a privilege exists. *See* Fed.R.Crim.P. 17(c)(2); Fed. R. Evd. 501.

Assuming that the requested records are referenced by these statutes, the Supreme Court has indicated that statutes prohibiting general disclosure of information do not bar judicial discovery absent an express prohibition against such disclosure. *See St. Regis Paper Co. v. United States,* 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1962). In determining whether a privilege protects the disclosure of the defendant's child support account information, the court must construe strictly these statutes that the Division suggests create such a privilege. *See Kri-*

*zak v. W.C., Brooks & Sons, Inc.,* 320 F.2d 37, 45 (4th Cir.1963).

None of the statutes referenced by the Division expressly allow for or bar disclosure in legal proceedings in response to a federal criminal subpoena issued by the government once probable cause has been established that the defendant committed a crime. *See In re: Grand Jury,* 2001 WL 896479 *3 (noting that whether regulations expressly disallow for such disclosure is relevant in inquiry of whether privilege exists). The court is, thus, uncertain as to the extent of any privilege that would prohibit the disclosure of such records or information in a federal criminal proceeding.

 Even assuming further, however, that the requested documents are subject to a state-created privilege against disclosure, this determination does not prevent a federal court from ordering the Division to comply with the subpoena duces tecum. Federal privilege law controls in federal criminal proceedings. *See United States v. Cartledge,* 928 F.2d 93, 96 (4th Cir.1991). In reviewing a state-created privilege, federal courts employ a balancing test which weighs the historical and policy considerations underlying the state legislative privilege and the concerns for comity between state and federal sovereignties against the need to enforce the federal criminal statutes. *See United States v. Gillock,* 445 U.S. 360, 368, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980); *Cartledge,* 928 F.2d at 96.

In so balancing the competing federal and state interests, it appears to the court that there is little justification for applying any state-created privilege in this case where the sought after records or information are directly relevant to federal criminal charges. *See Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (noting that no federal courts recognized asserted privilege and noting that justification for privilege was absent where records sought were involved in criminal prosecution); *Cartledge,* 928 F.2d at 98 (finding that federal interest of enforcing criminal statutes outweighed any applicable state interest). During the hearing, however, counsel for the defendant referenced this balancing test and argued that the government's interest in obtaining the information concerning child support payments was outweighed by the nature of the alleged charge and the need to keep such information confidential. The defendant also suggested that, although a subpoena duces tecum might be the surest way for the government to obtain the needed payment records, it is certainly not the only means by which the government might do so.

At this stage of the proceedings, prior to trial but subsequent to a grand jury determination that probable cause exists to believe that the defendant committed the crime alleged in Count Five of the superceding indictment, the court declines to enter into any consideration of the materiality of the defendant's alleged statement, its connection to the bankruptcy proceeding, or the substantiality of the charge. The court further disagrees that the need for the government to obtain information necessary to prove the allegation contained in Count Five is outweighed by the nominal intrusion on any privacy interest of the defendant. *See Couch,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548

The government has clarified that it is not seeking information with respect to payments made to any recipient of child support. Beyond whether the defendant has made child support payments, there is no other personal information sought by the government. Counsel for Division stated at the hearing that any payments at issue were owed to the Commonwealth of Virginia because it had provided the benefits. Thus, with respect to the defendant's argument that this information could be obtained elsewhere, the court finds that

this is unlikely. Counsel for the Division even conceded during the hearing that the Division is the only source of these records as it was to receive directly any support payments from the defendant. The government explained to the court that the information supporting Count Five was based on a credit report, which, although sufficient to support the grand jury indictment, would not be sufficient to establish proof of the allegation at trial. Thus, the court finds that the balancing of state and federal interests favors disclosure of this information, despite any existing state-created privilege. *See Cartledge,* 928 F.2d at 97.

### IV. Conclusion

Accordingly, based on this balancing of interests, including the government's need for the information and the likelihood that such information is not obtainable by other means, and for the other reasons stated on the record during the hearing on this matter, the Division's motion to quash the subpoena duces tecum is **DENIED**. The court **ORDERS** the government to reissue the subpoena duces tecum in modified form, appropriately limited in scope to information or records concerning arrearages, if any, on the defendant's child support payments for the time period extending from six months prior to and including February 16, 2000 to thirty days following February 16, 2000. *See* Fed.R.Crim.P. 17(c)(2). The Division is **ORDERED** to identify for the government the appropriate individual to whom the subpoena duces tecum should be directed.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for the government, the defendant and to counsel for the Division.

It is so **ORDERED**.